1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL JAY HARRIS,                          No.  2:13-cv-2604 TLN CKD P

12                  Petitioner,

13        v.                                       FINDINGS AND RECOMMENDATIONS

14   CONNIE GIPSON,

15                  Respondent.

16

17        Petitioner, a state prisoner, is proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  He challenges his 2010 conviction for 19 sexual offenses and his

19   sentence of 285 years to life.  (ECF No. 1("Ptn.") at 1.)  Respondent has filed an answer (ECF

20   No. 27), and petitioner has filed a traverse (ECF No. 37).  Upon careful consideration of the

21   record and the applicable law, the undersigned will recommend that the petition be denied for the

22   reasons set forth below.

23                                    BACKGROUND

24        In its affirmation of the judgment on appeal, the California Court of Appeal, Third

25   Appellate District, summarized the facts as follows:

26            The defendant sexually abused the twin daughters of his girlfriend
             over a period of more than three years.  He also committed a lewd
27            act on a neighbor girl.  Convicted by jury of many lewd acts and
             rape and sentenced to state prison for 19 consecutive indeterminate
28            terms of 15 years to life (an aggregate terms of 285 years to life),

                                              1

1    the defendant appeals.

2         . . .

3    The charges against the defendant involved three victims and four
     locations. The victims were the twin daughters (M.G. and C.G.) of
4    the defendant's live-in girlfriend (K.) and a younger neighbor girl
     (R.D.). The charges covered the defendant's molestations of M.G.
5    and C.G. from when they were 10 years old until they turned 14
     years old and the defendant's molestation of R.D. when she was
6    nine years old. The four locations were (1) the defendant's trailer
     in Bishop (Inyo County), (2) a home in Nevada County, (3) a trailer
7    in Chalfant (Mono County), and (4) a home in Orange County.

8         . . .

9    [T]he resolution of the issues raised by defendant on appeal does
     not require a comprehensive description of the evidence.
10

11   People v. Harris, 2012 WL 4023368, *1 (Cal. App. 3. Sept. 13, 2012), also at Lod. Doc. 1.[1]

12        Petitioner appealed his conviction (Lod. Docs. 2-4), and on September 13, 2012, the

13   California Court of Appeal for the Third Appellate District affirmed the judgment. Harris, 2012

14   WL 4023368.

15        Petitioner filed a petition for review in the California Supreme Court (Lod. Doc. 5), which

16   was summarily denied on December 19, 2012 (Lod. Doc. 6).

17        Between April 2010 and October 2011, petitioner filed four state habeas petitions,

18   asserting ineffective assistance claims. (Lod. Docs. 7-10.) All were denied by the state courts.

19   (Id.)

20        On December 22, 2011, petitioner filed a state habeas petition in the California Court of

21   Appeal for the Third Appellate District, raising numerous claims of ineffective assistance of

22   counsel. (Lod. Doc. 11.) On January 5, 2012, the court of appeal summarily denied the petition.

23   (Id.) Petitioner filed a petition for review in the California Supreme Court, which was denied on

24   March 21, 2012. (Lod. Doc. 12.)

25        On July 9, 2013, petitioner filed a habeas petition in the Mono County Superior Court,

26   asserting ineffective assistance of counsel, which was denied on August 13, 2013. (Lod. Doc.

27   13.) He next raised these claims in a petition to state court of appeal, which was summarily

28   ───────────────
     [1] See ECF No. 28 (Respondent's Notice of Lodging).

                                          2

denied on August 29, 2013.  (Lod. Doc. 14.)  Petitioner next raised the claims in a petition to the California Supreme Court, which was denied on November 26, 2013.  (Lod. Doc. 15.)

Petitioner commenced the instant action on December 16, 2013.  (ECF No. 1.)

## ANALYSIS

### I. AEDPA

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).  Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Harrington,

3

1   supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000).  "A state court's

2   determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

3   jurists could disagree' on the correctness of the state court's decision."  Id. at 786, citing

4   Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Accordingly, "a habeas court must

5   determine what arguments or theories supported or ... could have supported[] the state court's

6   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

7   arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id.

8   "Evaluating whether a rule application was unreasonable requires considering the rule's

9   specificity.  The more general the rule, the more leeway courts have in reaching outcomes in

10  case-by-case determinations.'"  Id.  Emphasizing the stringency of this standard, which "stops

11  short of imposing a complete bar of federal court relitigation of claims already rejected in state

12  court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not

13  mean the state court's contrary conclusion was unreasonable."  Id., citing Lockyer v. Andrade,

14  538 U.S. 63, 75 (2003).

15      The undersigned also finds that the same deference is paid to the factual determinations of

16  state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

17  subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

18  decision that was based on an unreasonable determination of the facts in light of the evidence

19  presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

20  2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

21  factual error must be so apparent that "fairminded jurists" examining the same record could not

22  abide by the state court factual determination.  A petitioner must show clearly and convincingly

23  that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338 (2006).

24      The habeas corpus petitioner bears the burden of demonstrating the objectively

25  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

26  Woodford v. Viscotti, 537 U.S. 19 (2002).  Specifically, the petitioner "must show that the state

27  court's ruling on the claim being presented in federal court was so lacking in justification that

28  there was an error well understood and comprehended in existing law beyond any possibility for

4

1  fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. "Clearly established" law is

2  law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van

3  Patten, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not

4  qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established

5  law not permitting state sponsored practices to inject bias into a criminal proceeding by

6  compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards

7  does not qualify as clearly established law when spectators' conduct is the alleged cause of bias

8  injection). The established Supreme Court authority reviewed must be a pronouncement on

9  constitutional principles, or other controlling federal law, as opposed to a pronouncement of

10  statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

11       The state courts need not have cited to federal authority, or even have indicated awareness

12  of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8. Where the state

13  courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal

14  court will independently review the record in adjudication of that issue. "Independent review of

15  the record is not de novo review of the constitutional issue, but rather, the only method by which

16  we can determine whether a silent state court decision is objectively unreasonable." Himes v.

17  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

18       "When a state court rejects a federal claim without expressly addressing that claim, a

19  federal habeas court must presume that the federal claim was adjudicated on the merits – but that

20  presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct.

21  1088, 1096 (2013). "When the evidence leads very clearly to the conclusion that a federal claim

22  was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of

23  the claim. Id. at 1097.

24  II. Petitioner's Claims

25  A. Admission of Evidence

26       Plaintiff asserts five claims challenging the admission of evidence at trial: Claims 1, 2, 4,

27  5, and 6. All of these claims were decided on the merits on appeal. After setting forth the claims

28  and relevant portions of the state court's decision, the undersigned will address their merits on

1  AEDPA review.

2  1.  Images and Data on Petitioner's Computer

3       In Claim 1, petitioner asserts that the trial court erroneously admitted prejudicial evidence

4  of "child sex-related material" from petitioner's computer, including "hundreds of graphic

5  images" that it was conceded petitioner had never viewed.  (Ptn. at 7, 17-21.[2])  He claims this

6  violated his federal Constitutional right to due process of law.  (Id.)

7       The state court of appeal addressed petitioner's claim as follows[3]:

8              *Admission of Images from Hard Drive and from Internet*

9              At trial and over the defendant's objections, the prosecution used
10             images and data found on the defendant's computer hard drive to
               establish the defendant's intent and motive in touching the victims
11             and the absence of mistake. The images and other data included
               child pornography and erotica. Also over the defendant's objections,
12             the prosecution introduced evidence that the defendant had visited
               various Web pages.  In connection with that evidence concerning
13             visited Web pages, the prosecution introduced representative
               images from those Web pages to establish the nature (again, child
14             pornography and erotica) of the Web pages visited.

15             On appeal, the defendant contends that (1), as to all images and
               related evidence, admission was inordinately time-consuming and
16             unduly prejudicial and therefore the evidence should have been
               excluded pursuant to Evidence Code section 352 and (2), as to the
17             representative images from the Web pages, those images were
               irrelevant because there was no evidence that the defendant viewed
18             those specific images on the Internet. We conclude that the trial
               court did not abuse its discretion in admitting the evidence.

19             A.  *Background*

20             During a search of the defendant's trailer, a laptop computer and
               two computer hard drives were found.  After extensive evidentiary
21             hearings, the trial court overruled the defendant's objections to five
               types of evidence: newsgroups, URLs (Web page addresses),
22             images of child pornography, images of child erotica, and a story
               about incest.  For purposes of discussion, the evidence can be
23             divided into two categories: (1) images and data accessed by the
               defendant and found on the seized hard drives and (2)
24             representative images found on the Internet at Web pages the

25  _____
    [2] Citations refer to page numbers assigned by the court's docketing system.

26
    [3] The undersigned excerpts key portions of the state court's decision, omitting, e.g., those parts of
27  the decision setting forth state evidence law.  The facts as set forth by the state court of appeal are
    presumed correct absent proof of error by clear and convincing evidence. 28 U.S.C. §2254(e)(1).
28

                                          6

defendant accessed. All evidence relevant to this discussion came from just one of the hard drives located in the defendant's residence.

. . .

1. Images and Data Accessed by the Defendant

. . .

The hard drive contained images that had been viewed by the defendant. These images included three of child pornography, featuring girls with exposed genitals. In addition to the child pornography, the defendant accessed numerous images of child erotica, ranging from "glamour" photographs to pictures of girls in gymnastics attire to pictures of girls in various states of undress.

2. Representative Images from Web Pages

Also on the hard drive was a temporary file containing the addresses (URLs) of Internet Web pages that the defendant accessed during a period of 12 days in May 2006. This file did not contain images, only the text of the addresses.

During his investigation, [forensic investigator] Wall visited the Web pages that the defendant had visited, as recorded in the temporary file recovered from the hard drive. Wall first visited the Web pages and printed out what was there in April 2009. Just before trial, in November 2009, Wall again visited the Web pages and printed out what was there.

Wall's printouts of the Web pages in April 2009 and November 2009 produced about 60 printed pages each, containing images, banners, text, and other Web page contents. Many of the images were child pornography and child erotica. We refer to these as "representative images" because the evidence did not establish that the defendant viewed these specific images but, instead, the printouts represented what types of images were displayed on the Web pages that the defendant accessed.

. . .

3. Procedure

The defendant objected to the hard-drive evidence. And the trial court overruled the objection after considering the relevance of the evidence. The court also considered and overruled the defendant's Evidence Code section 352 objection after analyzing the probative value and prejudicial effect of the evidence, as well as consumption of time and possible confusion of the jury.

. . .

C. *Images from Hard Drive*

The images of child pornography and erotica involving preteen and

7

other girls were relevant to the defendant's intent and motive and the absence of mistake.  The trial court properly found that the images showed that the defendant was sexually attracted to preteen girls, which could lead to an inference that he was sexually attracted to the victims and acted on that attraction. The defendant put at issue this intent with respect to the crimes charged when he pleaded not guilty.  [Citation omitted.]

. . .

We next turn to whether the prejudicial effect of the evidence substantially outweighed its probative value. (Evid. Code, § 352.)

. . .

While the evidence was unpleasant for the jury, it was meant to establish that the defendant intended to gratify his prurient desires in his abuse of the victims. It was highly probative in that regard. And it was not inflammatory compared to the shocking evidence of the defendant's repeated and substantial sexual abuse of the victims. In view of the probative value of the evidence, we cannot say that the evidence was so inflammatory that admitting it posed an intolerable risk to the fairness of the proceedings or the reliability of the outcome. Thus, admitting it was not an abuse of discretion.

*D.  Representative Images from Web Pages*

The admission of representative images from Web pages accessed by the defendant also was not an abuse of discretion. The defendant argues, in addition to the issues already discussed concerning consumption of time and the asserted inflammatory nature of the images, that the evidence obtained from the Web pages was irrelevant because the prosecution did not establish that the defendant ever viewed those particular images.

. . .

[This evidence] established the nature of the Web pages accessed by the defendant, which led to a reasonable inference that the defendant was sexually interested in and attracted to preteen girls, as shown by his activities in seeking out child pornography and child erotica on the Internet. As noted, the prosecutor argued to the jury that the representative images obtained from the Web pages established that the defendant visited Web pages full of child pornography and child erotica.

Therefore, the representative images were relevant, probative, and admissible.

Harris, 2012 WL 4023368, **4-9.

////

////

8

2.  <u>Child Sexual Abuse Accommodation Syndrome (CSAAS) Evidence</u>

In Claim 2, petitioner asserts that the admission of CSAAS evidence violated his constitutional right to a fair trial and due process of law.  (Ptn. at 1, 22-25.)

The state court of appeal addressed this claim as follows:

> *Child Sexual Abuse Accommodation Syndrome Evidence*

> The trial court admitted the prosecution's expert testimony concerning CSAAS and instructed the jury on its proper use. On appeal, the defendant contends that admission of this evidence violated his due process and fair trial rights because "the evidence was so irrelevant and prejudicial that it rendered the state proceedings fundamentally unfair." We conclude the evidence was properly admitted.

> Cathy McClennan, who is a forensic child interviewer, testified as an expert on CSAAS.  She stated that a child suffering from CSAAS generally exhibits five stages: (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4) delay in reporting, and (5) recantation. She explained that CSAAS is not a diagnostic tool— that is, it is not intended to determine whether a child has been abused.  Instead, assuming a child has been molested, it is meant to explain certain behaviors of the molested child.

> . . .

> While the defendant concedes that the victims delayed reporting the sexual abuse and, after they reported it, made inconsistent disclosures about the abuse, the defendant asserts that the CSAAS evidence was too generic to be probative and can be misconstrued by the jury as evidence that the defendant committed the crimes. He also notes that the admissibility of CSAAS evidence is not universally accepted outside of California.

> Nonetheless, delays and inconsistencies in the victims' disclosures are the type of evidence that supports the need for expert testimony on CSAAS to establish that the victims' actions were not necessarily inconsistent with having been abused.  We so held in <u>In re S.C.</u> (2006) 138 Cal.App.4th 396, 418.

> The defendant encourages us to revisit and disapprove our <u>In re S.C.</u> holding and find that the CSAAS evidence here was improper and prejudicial. We decline.

> . . .

> Since no higher court has disapproved <u>In re S.C.</u> or the cases relied on in that decision, we conclude that CSAAS evidence was properly admitted here.

<u>Harris</u>, 2012 WL 4023368, **9-10.

1    3. Underlined Uncharged Acts Evidence

2         In Claim 4, petitioner asserts that the trial court erroneously admitted evidence of

3    uncharged sexual acts with the same victims, violating his constitutional right to due process of

4    law.  (Ptn. at 7, 28-29.)

5         The state court of appeal addressed this claim as follows:

6                        *Admission of Uncharged Sexual Acts*

7              The prosecution charged the defendant only with committing
        crimes against the victims before they turned 14.  However, the
8        evidence, admitted over the defendant's objection, further showed
        that the defendant continued to commit the acts against the twins
9        when they were 14 and 15. The defendant contends that admission
        of this propensity evidence under Evidence Code section 1108
10       violated his due process and fair trial rights because the evidence
        was irrelevant and prejudicial. We conclude that the evidence was
11       properly admitted.

12            In addition to the twins' extensive testimony concerning the
        defendant's crimes against them before they turned 14, the twins
13       testified relatively briefly that the acts continued beyond their 14th
        birthday.  M.G. testified that, on more than one occasion after she
14       turned 14, the defendant touched her vagina and breasts and "the
        rest of [her] body."   C.G. testified that, after she turned 14, the
15       defendant sexually abused her anytime her mother went out
        horseback riding during the day.  She also testified that, on a trip to
16       either Disneyland or Magic Mountain, the defendant pulled off
        C.G.'s pajama pants and underwear and attempted to penetrate her
17       vagina with his penis.

18            The trial court instructed the jury concerning the proper use of the
        evidence of uncharged acts.
19

20            . . .

21            In this case, the evidence of uncharged acts was not unduly
        prejudicial.  The uncharged acts were no more egregious than the
22       charged acts.   And certainly the jury would not view the acts
        committed by the defendant when the victims were 14 and 15 more
23       repugnant than the acts committed by the defendant when the
        victims were under 14.   (See People v. Yovanov (1999) 69
24       Cal.App.4th 392, 406 [similarly involving charged and uncharged
        acts against twins].)

25            . . .

26            The trial court did not abuse its discretion in admitting the evidence
        of uncharged acts.
27

28   Harris, 2012 WL 4023368, **11-12.

                                    10

4. <u>Propensity Evidence</u>

In Claim 5, petitioner asserts that the admission of evidence of uncharged acts against the victims under Cal. Evid. Code § 1108, as set forth in the previous claim, violated his federal constitutional right to due process.  (Ptn. at 8, 29.)  "Evidence of specific uncharged acts to show conduct (criminal propensity evidence) is generally inadmissible in criminal cases," petitioner asserts.  "The California Supreme Court has held [Cal. Evid. Code § 1108] does not violate due process, and petitioner asks this court to rule on this matter."  (<u>Id.</u> at 29.)

The state court of appeal addressed petitioner's claim as follows:

> *Evidence Code Section 1108*
>
> The defendant recognizes that the California Supreme Court has held that admission of propensity evidence under Evidence Code section 1108 does not violate due process and fair trial rights. (<u>See</u> <u>People v. Reliford</u> (2003) 29 Cal.4th 1007, 1012–1016; <u>People v.</u> <u>Falsetta</u> (1999) 21 Cal. 4th 903, 910-922.)  However, to preserve the issue for further review in the federal courts, the defendant contends that his due process and fair trial rights were violated by the admission of the Evidence Code section 1108 propensity evidence.  As the defendant concedes we must (<u>Auto Equity Sales,</u> <u>Inc. v. Superior Court</u> (1962) 57 Cal.2d 450, 455), we reject this contention because the Supreme Court has rejected it.

<u>Harris</u>, 2012 WL 4023368, *12.

5. <u>Lay Opinions</u>

In Claim 6, petitioner asserts that the trial court erroneously permitted three lay witnesses to testify as to their beliefs about the truthfulness of petitioner's accusers, violating his constitutional right to due process and rendering his trial fundamentally unfair.  (Ptn. at 8, 30-32.)

The state court of appeal addressed this claim as follows:

> *Lay Opinions*
>
> The defense called Michael Hultz as a witness. He was a county-employed psychotherapist who assisted M.G.  She reported to Hultz that the defendant had sexually abused her.  On cross-examination by the prosecution, Hultz described M.G.'s demeanor when she talked about the sexual abuse and said she was upset and crying.  The prosecutor then asked: "Did it appear to you, based on common experience, that she was feigning that—that reaction?"  The defense objected based on "lack of personal knowledge."  And the trial court overruled the objection, cryptically saying, "It's fairly common."  Hultz responded that it did not appear to him that she was faking the reaction.

The prosecutor asked two other witnesses (another psychotherapist and an adult friend) essentially the same question with respect to C.G., and each responded that it did not appear to them that she was faking the emotional reaction (fear and embarrassment) to her disclosure of sexual abuse. The defense did not object to this questioning.

"Lay opinion about the veracity of particular statements by another is inadmissible on that issue." (People v. Melton (1988) 44 Cal.3d 713, 744.) "A lay witness is occasionally permitted to express an ultimate opinion based on his perception, but only where 'helpful to a clear understanding of his testimony' [citation], i.e., where the concrete observations on which the opinion is based cannot otherwise be conveyed. [Citations.]" (Ibid.) Improper admission of lay witness opinion testimony does not mandate reversal unless defendant can show it is reasonably probable he would have obtained a more favorable outcome had his objection been sustained. (Id. at pp. 744–745 [internal citation omitted].)

. . .

[Here,] any error in admitting the evidence was harmless. It is not probable that the jury, having heard the testimony that M.G. and C.G. were fearful and embarrassed when they disclosed the sexual abuse, would be swayed to believe that those disclosures were true based on the testimony that it did not appear to the witnesses that the victims were faking their reactions. It is the unhelpful nature of such opinion testimony that makes it inadmissible. (People v. Melton, supra, 44 Cal.3d at pp. 744–745.) The admission of the witnesses' beliefs concerning faking the reaction did not add appreciably to the testimony concerning what the victims said and how they reacted. Therefore, based on the strength of the evidence against the defendant and the weak nature of the opinion evidence, we conclude there was no miscarriage of justice.

Harris, 2012 WL 4023368, **12-13.

6. Analysis

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. See Romano v. Oklahoma, 512 U.S. 1, 12–13 (1994). "A habeas petition bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005). The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal citation omitted), the Ninth Circuit explained that:

12

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

Even if the trial court erred in allowing evidence to be admitted at trial, petitioner must show that the admission of such evidence had a "substantial and injurious effect on the jury's verdict." See Plascencia v. Alameida, 467 F.3d 1190, 1203 (9th Cir. 2006) (applying Brecht harmless error analysis to claim that admission of evidence was improper).

As to Claim 5, concerning propensity evidence, the Ninth Circuit has held that, because the Supreme Court has expressly declined to address whether the introduction of propensity evidence can violate due process, Estelle, 502 U.S. at 75 n. 5, no claim of unfair propensity evidence can succeed. Alberni v. McDaniel, 458 F.3d 860, 866–867 (9th Cir. 2006).

Finally, errors of state law are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 68 (1991) (standard of review for federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Here, petitioner asserts that the trial court admitted irrelevant and prejudicial evidence, including propensity evidence, in violation of his due process rights. However, petitioner has not established that the state court violated clearly established federal law in admitting the challenged evidence. Nor has he shown that any such error had a substantial and injurious effect on the jury's verdict. Thus petitioner is not entitled to relief under AEDPA for Claims 1, 2, 4, 5, and 6.

B. CSAAS Instruction

In Claim 3, petitioner challenges the trial court's use of jury instruction No. 1193, concerning expert testimony on CSAAS. (Ptn. at 1, 26-27.) "CSAAS evidence is constitutionally admissible in California with proper admonishment to the jury about the limits of its use," petitioner argues, "which is to disabuse the jury of commonly held misconceptions regarding the behavior of abuse victims and not to corroborate the accuser's claims of abuse." (Id. at 26.) However, "CALCRIM NO. 1193, given here, explicitly tells the jury that it may also use the CSAAS evidence to determine the credibility of the victims. This violated petitioner's right to

13

due process of law and a fair trial."  (Id.)

The state court of appeal addressed this claim as follows:

*CALCRIM No. 1193*

The trial court used CALCRIM No. 1193 to instruct the jury concerning the testimony of an expert on CSAAS.  The instruction stated that the jury could use the CSAAS evidence "in evaluating the believability of [the victims'] testimony."  The defendant contends that this instruction violated his due process and fair trial rights.  The contention is without merit.

The trial court instructed the jury concerning CSAAS as follows: "You've heard testimony from Ms. Cathy McClennan and Dr. Lee Coleman regarding Child Sexual Abuse Accommodation Syndrome.  Their testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶]  You may consider this evidence only in deciding whether or not [the victims'] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony."

Expert testimony "'is admissible to rehabilitate [a victim's] credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation.' [Citations.]"  (People v. Brown, supra, 33 Cal.4th at p. 906, quoting People v. McAlpin (1991) 53 Cal.3d 1289, 1300.)

The crux of the defendant's argument is found in this statement in his opening brief: "There is no authority for the proposition that CSAAS evidence may [be] used to corroborate the victim[s'] claims of abuse, but CALCRIM No. 1193 erroneously told the jury it could use the evidence to do so.  Jurors are presumed to have followed a court's instructions. [Citations.]"  This statement mischaracterizes the instruction.

Contrary to the defendant's argument, the trial court did not tell the jury that it could use the CSAAS evidence to corroborate the victims' claims of abuse.  That interpretation reads into the instruction something that is not there.  The instruction informed the jury that CSAAS evidence is not evidence that the defendant committed the crimes.  Instead, the jury's use of the CSAAS evidence was limited to "deciding whether or not [the victims'] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony."  This limitation, including the clause concerning evaluating believability, did not give the jury latitude to use the CSAAS evidence to corroborate the claims of abuse.  Consistent with Supreme Court precedent (People v. Brown, supra, 33 Cal.4th at p. 906), it allowed use of the CSAAS evidence only to evaluate the victims' credibility.

14

1    Therefore, the trial court properly instructed the jury using
2    CALCRIM No. 1193.

3    Harris, 2012 WL 4023368, **10-11.

4    In general, a challenge to jury instructions does not state a federal constitutional claim.

5    Engle v. Isaac, 456 U.S. 107, 119 (1982); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir.

6    1983). To warrant federal habeas relief, a challenge instruction cannot be "merely . . .

7    undesirable, erroneous, or even 'universally condemned,'" but must violate some due process

8    right guaranteed by the fourteenth amendment. Cupp v. Naughten, 414 U.S. 141, 146 (1973).

9    It is well established that the instruction "may not be judged in artificial isolation," but

10   must be considered in the context of the instructions as a whole and the trial record. Cupp, 414

11   U.S. at 147. Even if there is an instructional error, a habeas petitioner is not entitled to relief

12   unless the error "had substantial and injurious effect or influence in determining the jury's

13   verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

14   Here, the state court properly considered the CSAAS instruction in the context of the

15   accompanying instructions and determined it was proper under state law. The state courts'

16   interpretation of state law, including one announced on direct appeal of the challenged conviction,

17   binds a federal habeas court. See Bradshaw v. Richey, 546 U.S. 74, 77 (2005). Because the state

18   court's conclusion does not offend clearly established Supreme Court precedent, petitioner is not

19   entitled to federal habeas relief on his jury instruction claim.

20   C. Consecutive Sentences

21   In Claim 8, petitioner asserts that the trial court erred when it "made its own findings,

22   extraneous to the jury findings, in order to sentence petitioner to 19 consecutive 15-to-life terms,"

23   violating petitioner's Sixth Amendment right to a jury trial. (Ptn. at 8, 33-38.)

24   Addressing this claim on direct review, the state court of appeal wrote, in part:

25   *Indeterminate v. Determinate Sentencing*

26   Penal Code section 667.61 (the so-called "One Strike" law)
     provides for a life sentence for child molestation under specified
27   circumstances applicable in this case. However, only one life
     sentence may be imposed for multiple counts committed on a
28   "single occasion." The court imposed consecutive sentences of 15

15

1    years to life for the defendant's lewd act convictions.  On appeal,
     the defendant contends that the trial court could not impose the life

2    terms for some of the crimes because the jury found they occurred
     on the same occasion as other counts. The contention is without

3    merit.

4    At the time of the defendant's crimes, former subdivision (g) of
     Penal Code section 667.61 read, in relevant part: "The term

5    specified in subdivision (a) or (b) [life term] shall be imposed on
     the defendant once for any offense or offenses committed against a

6    single victim during a single occasion.  If there are multiple victims
     during a single occasion, the term specified in subdivision (a) or (b)

7    shall be imposed on the defendant once for each separate victim."
     [FN2 omitted.]   (Stats.1998, ch. 936, § 9, p. 6876, eff. Sept. 28,

8    1998, enacting Assem. Bill No. 105 (1997–1998 Reg. Sess.).)

9    The term "single occasion" in Penal Code section 667.61, former
     subdivision (g) meant "[the] sex offenses ... were committed in

10   close temporal and spatial proximity."  [FN3, citations omitted.]

11   . . .

12   The defendant contends that the trial court erred by imposing
     several of the life sentences because (1) the court applied the wrong

13   test and (2) the jury verdicts do not support the conclusion that
     those counts were not committed on a single occasion. Neither

14   contention has merit.

15   . . .

16   The defendant also asserts that the indeterminate sentences on the
     counts discussed violated his Sixth Amendment jury trial rights

17   under Blakely v. Washington (2004) 542 U.S. 296. We rejected this
     assertion in People v. Retanan, [(2007) 154 Cal.App.4th 1219, pp.

18   1227–1230.]

19   The trial court did not err by imposing consecutive sentences under
     Penal Code section 667.61.

20

21   Harris, 2012 WL 4023368, **13-16.

22        At petitioner's sentencing hearing on April 9, 2010, the trial court stated:

23   It is my belief that under People v. Murphy, found at 65 Cal. App.
     4th 41, that the defendant is subject to consecutive, full-term, 15-to-

24   life sentences on each of the 19 counts of which he was convicted.
     It is my intention to so sentence him for the following reasons:

25

26   I determined that as to each individual victim and among them all
     no offense of which Defendant was convicted occurred on a single
     occasion.  I have in mind the testimony of [C.G.] and [M.G.] that

27   the molestation they suffered at the hands of the Defendant
     occurred on an almost daily basis; that is, they were of a serial

28   nature at whatever location they happened to be living or visiting at

16

any point in time. The matter of charging, a somewhat convoluted presentation of evidence by the People notwithstanding, I find beyond a reasonable doubt, although I recognize that the applicable standard is preponderance of the evidence, that none of the offenses found by the jury occurred on a single occasion or during a single episode or transaction.

For each offense on which the jury found the defendant guilty, he had significant opportunity to reflect on his actions and nonetheless continued for a period of many years his serial molestations of the young and vulnerable victims.

Defendant had separate, distinct, and independent objectives on each occasion of molest and rape, although his motives were the same, that being sexual gratification. It is my belief this implicates no Sixth Amendment issues pursuant to the recent case of <u>Oregon v. Ice</u>, 129 S. Ct. 711.

(17 RT 2409-2410.)

First, federal habeas corpus relief is unavailable for alleged errors in the interpretation or application of state sentencing laws by a state court. <u>See</u> <u>Richmond v. Lewis</u>, 506 U.S. 40, 50 (1992) (the question to be decided by a federal court on petition for habeas corpus is not whether the state committed state-law error but whether the state court's action was "so arbitrary or capricious" as to constitute an independent violation of the federal constitution). Thus, insofar as petitioner asserts that the state courts erred in applying Cal. Penal Code § 667.61, his claim is not cognizable under AEDPA.

Turning to the Sixth Amendment issue, in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), the Supreme Court held that, except for the fact of a prior conviction, any facts that increase a defendant's sentence beyond the statutory maximum must be proved to a jury beyond a reasonable doubt. However, in <u>Oregon v. Ice</u>, 555 U.S. 160 (2009), the Supreme Court held that <u>Apprendi</u> does not apply to findings of fact necessary for the imposition of consecutive sentences; such findings may be made by a judge, consistent with the Sixth Amendment. Thus the trial court's fact-finding to impose consecutive sentences in petitioner's case, as affirmed by the state appellate courts, was not an unreasonable application of clearly established federal law, and petitioner is not entitled to habeas relief on this claim.

////

////

17

D. Ineffective Assistance

1. Trial Attorney Claims

Petitioner first claimed ineffective assistance of trial counsel Theresa Hankel in a post-trial motion for substitution of counsel, brought in conjunction with a motion for new trial.  On March 10, 2010, the trial court held a Marsden[4] hearing on petitioner's substitution motion and concluded that petitioner did not establish that he "was deprived of effective assistance of counsel, []or that his due process rights were impaired."  (Reporter's Transcript of March 10, 2010 hearing ("RT Marsden") at 2368; see ECF No. 22.)  The trial court also stated its findings that Ms. Hankel

> made and argued very complex pretrial motions very appropriately and in my judgment very effectively.  She participated effectively and vigorously in the jury selection process.  She made [a] coherent, cogent opening statement.  She found and utilized appropriate experts on the child sexual abuse accommodation syndrome, medical and computer evidence issues.  She had [a] consistent defense throughout . . . and the evidence was presented in a way that put the best foot forward on it. . . . She conducted both cross and direct examination of trial witnesses effectively, and she made an organized and relevant closing argument.

(RT (Marsden) at 2365-2366.)

Petitioner next raised multiple ineffective assistance claims in a series of four habeas petitions in the state courts.  (Lod. Docs. 7-12.)  In the last of these, petitioner asserted his ineffective assistance claims in the state court of appeal and the state supreme court, both of which summarily denied his petition.  (Lod. Docs. 11, 12.)  This denial is presumptively on the merits.  (Lod. Doc. 12.)

In his federal petition, petitioner asserts the following claims concerning the performance of attorney Randall Gephart, who represented petitioner for the first twelve months of his criminal case before being replaced by Hankel[5], who represented petitioner for trial and sentencing (see

---

[4] People v. Marsden, 2 Cal. 3d 118 (1970).

[5] Petitioner states that there were three Marsden hearings in his criminal case, the first two concerning Gephart's representation of petitioner and the third, Hankel's.  "At the conclusion of the second Marsden hearing, Gephart joined Harris's motion and was denied the opportunity to remove himself from the case.  Gephart filed in the Court of Appeal where he was successful in

18

Ptn. at 40, 43):

- He disclosed  privileged attorney-client communications to the prosecutor, violating petitioner's right to due process of law and effective assistance of counsel (Claim 10);

- He failed to investigate facts, research the law correctly, and diligently prepare for trial (Claim 11);

- He and Hankel both failed to file a demurrer to the defective charging document (Claim 18);

- He and Hankel both asserted that the "captain of the ship" doctrine gave them the right to decide all tactics and strategy (Claim 21);

- He and Hankel both failed to file motions in limine relating to Cal. Evid. Code § 1008 (Claim 23);

- He and Hankel's cumulative acts and omissions lowered the People's burden of proof (Claim 24); and

- He and Hankel both failed to provide constitutionally adequate assistance (Claim 25).

(Ptn. at 7-13.)

Along with the claims asserted against both attorneys, above, petitioner raises the following claims concerning Hankel:

- She failed to investigate facts, research the law correctly, and diligently prepare for trial (Claim 12);

- She failed to investigate, and call to testify, important exculpatory witnesses (Claim 13);

- She failed to present important exculpatory evidence (Claim 14);

- She failed to effectively confront and cross-examine witnesses (Claim 15);

- She operated with a conflict of interest by withholding evidence from petitioner and arguing against petitioner's interests (Claim 16);

- She did not allow petitioner to articulate a complete exposition of his defense while testifying (Claim 17);

his removal effort and Hankel was appointed."  (Ptn. at 40-41.)

- She failed to object to the defective instructions and redirect forms (Claim 19);

- She failed to object to the prosecutor's improper argument (Claim 20); and

- She denied petitioner a potentially meritorious defense (Claim 22)[6].

(Ptn. at 7-13.)

In support of these claims, petitioner attaches a 146-page account of the day-to-day proceedings in his criminal case, from his bail review hearing in August 2007 through sentencing in April 2010.  (Ptn. at 40-186 ("Grounds 10-15 Facts").)

2.  Appellate Attorney Claim

In Claim 9, petitioner asserts that his appellate counsel rendered ineffective assistance. (Ptn. at 9.)  In support of this claim, he states:

> Appointed appellate counsel failed to raise ineffective assistance of counsel claims in the direct appeal or by seeking to expand her appointment in order to present a habeas petition in conjunction with the direct appeal.  This forced petitioner to raise IAC claims in the first instance in a pro se habeas petition.  Appellate counsel was provided detailed and comprehensive documented claims (detailed herein as Grounds 10-25) and . . . failed to investigate or raise claims on petitioner's behalf.  This effectively denied petitioner the assistance of counsel to raise IAC claims against the trial attorney.

(Ptn. at 23.)

Petitioner raised this claim in his July 9, 2013 habeas petition in the state superior court, which denied it, concluding: "Petitioner fails to provide a factual basis for the claim of ineffective assistance of counsel by appointed appellate counsel . . . , and fails to show any prejudice."  (Lod. Doc. 13 at 3.)  At the next level of review, the state court of appeal summarily denied the claim. (Lod. Doc. 14.)  Next, the state supreme court denied the claim with citations to People v. Duvall, 9 Cal. 4th 464, 474 (1995) and In re Swain, 34 Cal. 2d 300, 304 (1949), meaning petitioner failed to plead his claim with particularity and/or support it with documentary evidence.  Thus this claim was denied on the merits.

////

---

[6] Petitioner "wanted to pursue a defense that was based on an escalation of accusations ... based on suggestion and cueing by investigators interviewing the accusers," but "Hankel was determined to present a defense rooted in the premise that the accusers had a plan to get out of their mother's home."  (Ptn. at 41-42.)

1    3. _Analysis_

2         The Supreme Court has enunciated the standards for judging ineffective assistance of

3    counsel claims.  See Strickland v. Washington, 466 U.S. 668 (1984).  First, a defendant must

4    show that, considering all the circumstances, counsel's performance fell below an objective

5    standard of reasonableness.  Strickland, 466 U.S. at 688.  To this end, the defendant must identify

6    the acts or omissions that are alleged not to have been the result of reasonable professional

7    judgment.  Id. at 690.  The court must then determine, whether in light of all the circumstances,

8    the identified acts or omissions were outside the wide range of professional competent assistance.

9    Id.  Second, a defendant must affirmatively prove prejudice.  Id. at 693.  Prejudice is found where

10   "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

11   proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability

12   sufficient to undermine confidence in the outcome."  Id.  See also United States v. Murray, 751

13   F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-718 (9th Cir.

14   1984) (per curiam).

15        As to ineffective assistance claims in the federal habeas context, the Supreme

16   Court has instructed: "The standards created by Strickland and § 2254(d) are both 'highly

17   deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.]  . . . . When §

18   2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is

19   whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."

20   Richter, 562 U.S. at 105 (internal citations omitted).

21        Here, petitioner has not shown that the state courts' decisions on his ineffective assistance

22   claims were objectively unreasonable under the AEDPA/Strickland standard.  As to Hankel, the

23   trial judge considered petitioner's arguments and found that Hankel provided competent and

24   adequate representation.  The state appellate courts found petitioner's ineffective assistance

25   claims to lack merit, and – even assuming arguendo that trial counsel was constitutionally

26   ineffective in some way – petitioner does not show that he was prejudiced by any of the alleged

27   deficiencies under the Strickland standard.

28   ////

As to appellate counsel, petitioner has shown neither ineffectiveness nor prejudice.  See Jones v. Barnes, 463 U.S. 745, 751 (1983) (indigent defendant has no constitutional right to compel appellate counsel to press nonfrivolous points if counsel, as a matter of professional judgment, decides not to present those points).  Thus petitioner is not entitled to federal habeas relief for Claims 10-25.

E.  Cumulative Error

In Claim 7, petitioner asserts that the "cumulative prejudice" from all the errors at trial violated his federal right to due process of law.  (Ptn. at 8.)  Petitioner raised this claim on direct appeal, which the state appellate court addressed as follows:

*Alleged Cumulative Error*

> Asserting that the trial was "infected with major errors," the defendant contends that there was "cumulative and collective prejudice."  The contention fails because, as we have noted in this opinion, the trial was not infected with major errors.  The record of the trial does not "raise[ ] the strong possibility" that aggregated prejudice from trial court error denied the defendant a fair trial.  (See People v. Hill (1998) 17 Cal.4th 800, 844.)

People v. Harris, 2012 WL 40223368, *13.

Having reviewed the record of this action and petitioner's instant claims, the undersigned concludes that petitioner has not shown entitlement to federal habeas relief on this ground.  See U.S. v. Rivera, 900 F.2d 1462, 1471 (9th Cir. 1990) ("[A] cumulative error analysis should evaluate only the effect of matters determined to be errors, not the cumulative effect of non-errors.").

Accordingly, IT IS HEREBY RECOMMENDED that the petition be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The

////

1    parties are advised that failure to file objections within the specified time waives the right to

2    appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    Dated:  October 8, 2015

4                                                                   _____
                                                                    CAROLYN K. DELANEY

5                                                                   UNITED STATES MAGISTRATE JUDGE

6

7

8    2 / harri2604.hc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28